UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JEROME J. PATE, et al.,** | ) | **CASE NO. 5:12CV1044** |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | **JUDGE SARA LIOI** |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| **HUNTINGTON NATIONAL BANK, et al.,** | ) | **ORDER** |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is plaintiffs' motion to remand this action to the Summit County Court of Common Pleas for want of subject matter jurisdiction, pursuant to 28 U.S.C. § 1447(c). (Doc. No. 54.) Defendants SunTrust Bank ("SunTrust"), Fifth Third Bank ("Fifth Third"), and Huntington National Bank ("Huntington") have filed briefs in opposition to the motion (Doc. Nos. 65, 66, 67), to which plaintiffs have filed replies (Doc. Nos. 69, 70, 71). This matter is ripe for disposition. For the reasons that follow, plaintiffs' motion is **DENIED**.

I.  BACKGROUND

On April 27, 2012, Huntington removed this case based on diversity jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (Doc. No. 1.) Attached to the removal petition is plaintiffs' original proposed class action complaint, which plaintiffs filed in the state court on March 26, 2012 (Doc. No. 1-1), as well as plaintiffs' amended class action complaint, which was filed in the state court on April 11, 2012 (Doc. No. 1-2). Plaintiffs' action arises out of an alleged Ponzi scheme perpetrated by James P. Carpenter ("Carpenter") and others in 1998-1999.

The amended complaint alleges that plaintiffs, and at least 250 other proposed class members, purchased fraudulent promissory notes from Carpenter and his associates. The notes were purportedly issued by two entities known as Serengeti Diamonds USA, Inc. ("Serengeti") and Lomas de la Barra Development ("Lomas"), who later turned out to be non-existent, sham companies. The amended complaint asserts that Carpenter's scheme fraudulently induced plaintiffs and the class members to write hundreds of checks, the majority of which were made payable in amounts greater than or equal to $10,000.00, and the combined value of which totaled substantially more than $4 million. (Doc. No. 1-2 at 65, 72.) All told, the amended complaint contends that the proposed class "collectively lost more than fifteen million dollars ($15,000,000) in the Lomas and Serengeti frauds." (*Id*. at 85.)

The amended complaint seeks to recover plaintiffs' losses from the depositary and drawee banks that negotiated plaintiffs' checks. Specifically, plaintiffs allege that they drew checks payable to Lomas and Serengeti on their accounts with the defendant drawee banks, Huntington and Fifth Third. Carpenter then deposited plaintiffs' checks into accounts opened in the name of Lomas and/or Serengeti with the defendant depositary banks, Huntington, Fifth Third, SunTrust and Wells Fargo Bank, N.A. ("Wells Fargo").[1] The depositary banks then presented the checks for payment to the drawee banks, and plaintiffs' accounts were debited. Carpenter then withdrew and/or transferred the money from the fraudulently created accounts and absconded with plaintiffs' funds.

---

[1] The second amended complaint (Doc. No. 61) substitutes Wells Fargo as a defendant for the previously named defendant Wachovia Bank, N.A. Wells Fargo has not filed a brief in opposition to the motion to remand, however, it does not appear from the record that service of the second amended complaint has yet been perfected upon Wells Fargo.

2

Based on the foregoing, plaintiffs' amended complaint asserts three claims against the defendant banks. Count One alleges the depositary banks are liable for conversion in violation of Ohio Rev. Code § 1303.60. Count Two asserts that the depositary banks aided and abetted Carpenter's tortious conduct and proximately caused "millions of dollars of damages" to plaintiffs and the class members. (*Id.* at 98.) Count Three is against the drawee banks for improperly paying the checks and/or debiting plaintiffs' accounts in violation of Ohio Rev. Code § 1304.30. The amended complaint seeks to hold the banks liable for the face value of all of plaintiffs' checks, as well as consequential damages, punitive damages, and attorney fees.

On July 16, 2012, plaintiffs moved to remand this action, asserting that the removing defendant, Huntington, cannot establish that this Court has jurisdiction under CAFA because it cannot show that the amount in controversy exceeds $5 million. (Doc. Nos. 54; 54-1.) Further, in conjunction with their motion to remand, plaintiffs sought and were granted leave to file a second amended complaint, which drops Counts Two and Three and several defendants and purports to disclaim damages beyond $4,999,999.99. (Doc. Nos. 57; 58; 61.)

## II.    LAW AND ANALYSIS

A defendant may remove to federal court only state court actions that originally could have been filed in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). As a court of limited jurisdiction, a federal district court must proceed cautiously in determining whether it has subject matter jurisdiction. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996). The court must give "[d]ue regard" to the power reserved to the states under the Constitution to provide for the determination of controversies in the state courts. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). Accordingly, removal

statutes must be construed strictly to promote comity and preserve jurisdictional boundaries between state and federal courts. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "[A]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

The defendant seeking removal bears the burden of establishing federal jurisdiction. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000); *see also*, *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam) ("under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction"). "Jurisdiction is determined at the time of removal, and subsequent events, 'whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached.'" *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)); *see also*, *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) ("The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal."). Contrary to plaintiffs' unsupported assertions otherwise, these general jurisdiction principles apply whether jurisdiction is based on the general diversity statute or CAFA. *Metz v. Unizan Bank*, 649 F.3d 492, 500-01 (6th Cir. 2011); *see also*, *Chesner v. Stewart Title Guar. Co.*, No. 1:06CV00476, 2009 WL 585823, at *11 n. 20 (N.D. Ohio Jan. 9, 2009) ("the well-established 'time of removal' principle that dictates the amount in controversy for purposes of the general diversity statute also applies to cases under CAFA.") (citing *Levitt v. Fax.com*, No. WMN-05-949, 2007 WL 3169078, at *7 (D. Md. May 25, 2007) (citing *Davis v. Homecomings Fin.*, No. C05-1466RSL, 2007 WL 905939, at *1-2 (W.D. Wash. Mar. 22, 2007))).

Huntington removed plaintiffs' amended complaint to this Court under CAFA. Determining whether the Court has jurisdiction over the class action removed by Huntington pursuant to CAFA involves a two-step process. First, Hutntington must show that CAFA's basic jurisdictional requirements have been met. *See Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007). "Second, if [CAFA's] jurisdictional requirements have been met, the plaintiff has the burden to show that the case falls within one of three enumerated exceptions set forth in § 1332(d)." *See Dean v. Draughons Junior Coll., Inc.*, No. 3:12-cv-0157, 2012 WL 2357492, at *3 n. 5 (M.D. Tenn. Jun. 20, 2012) (noting that although the Sixth Circuit has not addressed the issue, the federal circuits have "uniformly concluded" that, after general jurisdiction is established by the removing party, the burden shifts to the party opposing federal jurisdiction to show an exception to CAFA applies) (internal quotation marks and citations omitted).

**A. CAFA's Jurisdictional Requirements**

CAFA provides that putative class actions may be removed from state court to a federal district court when three requirements are met: the matter in controversy exceeds the sum or value of $5,000,000; there is minimal diversity (any member of the plaintiff class is a citizen of a different state from any defendant); and the putative plaintiff class numbers 100 or more. 28 U.S.C. §§ 1332(d) and 1453(b). Here, the parties do not dispute that the requisite diversity of citizenship exists under CAFA. Likewise, there is no dispute this case exceeds CAFA's 100 class-member requirement. The issue in this case, therefore, is whether defendants have met their burden of demonstrating CAFA's $5 million amount-in-controversy requirement.

Defendants Huntington, Fifth Third and SunTrust argue that the basis for CAFA jurisdiction is unambiguously established on the face of plaintiffs' amended complaint (Doc. No. 1-2) and that neither plaintiffs' post-removal amendment or a stipulation limiting damages divests this Court of jurisdiction, which is measured at the time of removal.

Plaintiffs contend that defendants have failed to establish by a preponderance of the evidence that the amount in controversy is greater than $5 million because they have not presented any evidence to show the value of plaintiffs' claims. *See Smith*, 505 F.3d at 401. Further, plaintiffs assert that the damage allegations in the second amended complaint and their stipulation as to damages below the jurisdictional threshold are offered to make "the information in the complaint more accurate, and [to present] a clearer picture of the value of claims a [*sic*] removal[,]" and are not an impermissible post-removal attempt to reduce the size of their claims. (Doc. No. 69-1 at 1418.)

The Court concludes that removal of this action was proper and that plaintiffs' post-removal amendment and stipulation do not divest this Court of jurisdiction under CAFA.

When the underlying complaint *seeks an indeterminate or unspecified amount of damages*, the removing defendant has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). Conversely, as is the case here, "[i]n 'a suit instituted in a state court and thence removed,' plaintiffs' claim of damages exceeding the federal amount in controversy is *presumed correct* unless shown to a legal certainty that the amount is actually less than the federal standard. *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 409 (6th Cir. 2008) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 290-92; and

6

citing *Gafford v. Gen. Electric Co.*, 997 F.2d 150, 157 (6th Cir.1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)). "Thus, once the defendant has pointed to an adequate jurisdictional amount, the situation becomes analogous to the 'typical' circumstances in which the *St. Paul Mercury* 'legal certainty' test is applicable. . . ." *Id*. (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995)) (internal quotation marks omitted). Absent such legal certainty, a complaint should not be dismissed for lack of subject matter jurisdiction. *Osamor v. Robinson*, No. 1:09cv694, 2010 WL 5898076, at *3 (S.D. Ohio Dec. 9, 2010) (citing *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996); *St. Paul Mercury Indem. Co.*, 303 U.S. at 289; *Kovacs v. Chesley*, 406 F.3d 393,395 (6th Cir. 2005)).

Here, the amended complaint expressly and unambiguously states that the victims of the alleged frauds "have collectively lost more than fifteen million dollars[,]" (Doc. No. 1-2 at 85), and that defendants are the proximate cause of those losses. (*Id*. at 98, 107.) This amount vastly exceeds the jurisdictional threshold and is presumed correct unless it is shown to a legal certainty that the claimed amount is actually less than $5 million. *Freeman*, 551 F.3d at 409.

Notwithstanding the unequivocal allegations as to the putative class's claimed damages, plaintiffs assert that defendants are not entitled to rely upon the "inflated numbers of Pate's claims[,] when [the banks] always knew [these numbers] *were false*[]" and knew "exactly how much the potential value of the claims against [the banks] are." (Doc. No. 69-1 at 1418)[2]

---

[2] Counsel's assertions in his reply brief are cause for concern, particularly his specious allegation that plaintiffs in state civil class actions are routinely "tempted" to overstate their class allegations to ensure class certification and the implication that he may have succumbed to such temptation in this case. (Doc. No. 69-1 at 1418.) Counsel is cautioned that Ohio Civil Rule 11 clearly prohibits such conduct. *See, e.g.*, *Ponder v. Kamienski*, No. 23270, 2007 WL 2781197, at *8 (Ohio Ct. App. Sept. 6, 2007) ("A willful violation involves a party who has willfully signed a pleading which, to the best of his knowledge, information and belief, was not supported by good ground.") (citation omitted); *Lewis v. Celina Fin. Corp.*, 101 Ohio App. 3d 464, 471 (Ohio Ct. App. 1995) (affirming sanction of attorney for bad faith in signing complaint without conducting adequate background investigation). Ohio Civ. R. 11, provides in relevant part, that, "[t]he signature of an attorney . . . constitutes a certificate by the attorney or party

(emphasis added). Plaintiffs assert their allegations concerning class size and claim values in the *second* amended complaint are "more accurate," and in essence, clarify their earlier representations. (*Id.*) According to plaintiffs, if the Court retains this case based on the amounts alleged in the amended complaint, as opposed to the second amended complaint, it "would be tantamount to allowing collusion to present false valuations to the court." (*Id.*)

Despite what is essentially an admission that plaintiffs' counsel either falsified the amended complaint by inflating the amount of damages recoverable, or is now belatedly trying to manipulate the amount in controversy in a blatant attempt to avoid federal jurisdiction, the Court finds no basis to conclude that defendants were complicit in plaintiffs' duplicity. On the contrary, at the time of removal Huntington had a good faith basis for concluding that the amended complaint implicated the Court's jurisdiction under CAFA. Indeed, the amended complaint, on its face, sought a *determinate and specific* amount of damages well in excess of the jurisdictional threshold. This, coupled with the sheer numbers of potential class members and the type and amount of alleged harm to each, provided more than ample basis for removal. Plaintiffs' unsupported and speculative assertions as to the banks' collective knowledge aside, plaintiffs do not point to a single allegation in the amended complaint that would have suggested to Huntington that the actual amount in controversy fell below CAFA's jurisdictional threshold.

As defendants correctly point out, once a case is properly removed, a plaintiff cannot amend the complaint to defeat diversity jurisdiction by lowering the amount in controversy. *St. Paul Mercury Indem. Co.,* 303 U.S. at 294 ("events occurring subsequent to

---

that . . . to the best of the attorney's . . . knowledge, information, and belief there is *good ground* to support it[.]" Ohio Civ. R. 11 (emphasis added). It is plain that the manipulation of a damages claim, "for purposes of making class certification more likely," does not constitute good ground. Indeed, such assertions serve only to mislead the parties and the courts and smack of gamesmanship, at the least, and abuse of process, at worst.

removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of volition, do not oust the district court's jurisdiction"). "[T]he status of the case as disclosed by the [plaintiffs'] complaint is controlling in the case of a removal[.] . . . And though, as here, the [plaintiffs] after removal, by stipulation, by affidavit, or by amendment of [their] pleadings, [reduce] the claim below the requisite amount, this does not deprive the district court of jurisdiction." *Id.* at 292. Further, "[c]laims present when a suit is removed but subsequently dismissed from the case . . . enter into the amount-in-controversy calculation. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (citing *St. Paul Mercury Indem. Co.,* 303 U.S. at 293). Thus, plaintiffs' post-removal dismissal of certain claims in support of remand also does not deprive this Court of jurisdiction under CAFA.

Plaintiffs' reliance on *Smith* to the contrary is misplaced. In that case, the Sixth Circuit, recognizing that a plaintiff is the master of his complaint, upheld a district court's reliance on a damage disclaimer to defeat CAFA jurisdiction that was contained in an amended complaint *filed in the state court prior to removal*. *Smith*, 505 F.3d at 403. Here, by contrast, plaintiffs' amended complaint included no damage disclaimer, but instead *expressly demanded* damages well above the jurisdictional minimum. Plaintiffs' post-removal disclaimer, as a matter of law, does not oust this Court of jurisdiction, as it existed at the time of removal. *See In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) ("a post removal amendment . . . does not destroy CAFA jurisdiction" because "jurisdiction cannot be 'ousted' by later events."); *see also, Metz*, 649 F.3d at 500-01; *Rogers*, 230 F.3d at 872; *Potts v. Zurich, N.A.*, No. 4:11CV1470, 2012 WL 946891, at *3 (N.D. Ohio Mar. 20, 2012).

**B. CAFA Exception**

Alternatively, plaintiffs argue that, even if subject matter jurisdiction exists, the Court should exercise its discretion to decline to hear this case in light of its "substantial nexus with Ohio[]" pursuant to 28 U.S.C. § 1332(d)(3). (Doc. No. 54-1 at 1147.) Specifically, plaintiffs contend that the Court should remand this case because the dispute in this case is over "a cutting edge rule of Ohio UCC law," and because the number of Ohio plaintiffs outnumbers those from other states.

Under § 1332(d)(3), the Court may, subject to consideration of certain factors, decline to exercise jurisdiction in "which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate *and the primary defendants* are citizens of the State in which the action was originally filed[.]" 28 U.S.C. § 1332(d)(3) (emphasis added). Pursuant to the plain language of this provision, the exemption requires that all of the "primary defendants" and a majority of the proposed plaintiff classes be citizens of the state in which the action was filed. *Dean*, 2012 WL 2357492, at *3 ("the 'consensus among the courts . . . . that the plural use of 'defendants' means that all primary defendants must be citizens of the state in which the action was originally filed . . . .'") (quoting *Adams v. Macon Cnty. Greyhound Park, Inc.*, 829 F. Supp. 2d 1127, 1138 n. 13 (M.D. Ala. 2011) (collecting cases)). "Stated another way, if at least one primary defendant is diverse from the requisite proportion of the proposed plaintiff class[es] . . . ," the exemption does not apply "and the court must retain jurisdiction." *Id.*

Here, this action was filed in Ohio, and plaintiffs contend that, although not all of the defendant banks are citizens of Ohio, only the two Ohio banks (Fifth Third and Huntington) are primary defendants because those banks have more claims against them than the foreign

10

banks (Wells Fargo and SunTrust), "by a ratio of about 7 – 3." (Doc. No. 69-1 at 1419.) By contrast, defendants argue that all four defendant banks are primary defendants, as they have a dominant relation to the subject matter in controversy, as opposed to "secondary defendants," who can only be parties sued under a vicarious liability theory or joined for purposes of contribution or indemnification. *See McClendon v. Challenge Fin. Investors Corp.*, No. 1:08CV1189, 2009 WL 589245, at *13 (N.D. Ohio Mar. 9, 2009). Thus, defendants assert that because two of the four primary defendants are not Ohio residents, § 1332(d)(3) is inapplicable.

CAFA does not define the term "primary defendants," nor has the Sixth Circuit addressed the meaning of that term. The courts have developed varying tests determining who is a primary defendant. These tests were recently summarized by another court within this circuit:

> Some courts, construing the term by reference to an analogous provision of the Multiparty, Multiforum, Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369, have defined "primary defendants" as those parties that are allegedly directly liable to the plaintiffs, while 'secondary defendants' are . . . those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification. . . . Other district courts have adopted different approaches, holding that a "primary defendant" is one who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is the subject of a significant portion of the claims asserted by plaintiffs; or (4) is the only defendant named in one particular cause of action.

*Dean*, at *4 (internal quotation marks and citations omitted).

Defendants argue the Court should follow those courts that measure "primary" versus "secondary" based on whether a particular defendant faces direct liability, while plaintiffs argue that the Court should determine whether a particular defendant is "primary" by comparing the number of claims asserted against each defendant. Because each of the individually named defendant depositary banks constitutes a "primary defendant" under any reasonable

11

interpretation of that term, the Court need not determine which of the preceding definitions of "primary defendant" is controlling.

With little exception, the amended complaint fails to distinguish between the in-state and out-of-state defendant banks' conduct and the extent of their individual liability. The plaintiffs' amended complaint alleges that *each* defendant depositary bank allowed Carpenter to open an account for non-existent business entities; that *each* negotiated the victims' checks; that *all* depositary banks failed in their duty to ensure proper internal security procedures; and that *all* of the depositary banks are liable to plaintiffs for conversion and aiding and abetting Carpenter's tortious conduct. Further, plaintiffs contend that a "significant number of checks Carpenter stole from the Plaintiffs were wrongfully negotiated, and laundered through . . . and converted by . . ." the foreign defendant banks, SunTrust and/or Wells Fargo (formerly Wachovia Bank, N.A.) and, therefore, these banks are "liable to many Plaintiffs." (Doc. No. 1-2 at 79.) Assuming, as the amended complaint alleges, that Huntington alone is liable for more than $4 million in improperly negotiated checks, then, at a minimum, the remaining defendant banks are responsible for the outstanding $11 million out of the total $15 million in alleged losses. This is not an insignificant sum. Moreover, plaintiffs seek to hold each of the depositary banks directly liable under the same causes of action for the same conduct, and request the same relief from each. Under these circumstances, SunTrust and Wells Fargo do not amount to "secondary" defendants in any significant way.

Accordingly, the Court finds that plaintiffs have not demonstrated that the diverse defendants, SunTrust and Wells Fargo, do not constitute "primary defendants" for purposes of the CAFA exemption in § 1332(d)(3). Because both of these defendants are not Ohio citizens,

they are diverse from the putative Ohio plaintiffs and the exemption set forth in § 1332(d)(3) does not apply. *See Dean, supra; McClendon, supra; see also, Meiman v. Kenton Cnty., Ky.*, No. 10-156-DLB, 2011 WL 350465, at *9 (E.D. Ky. Feb. 2, 2011).

### III. CONCLUSION

For all the foregoing reasons, plaintiffs' motion to remand is **DENIED**.

**IT IS SO ORDERED**.

Dated: February 12, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**