UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME J. PATE, et al. | ) | CASE NO. 5:12cv1044 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | |
| | ) | MEMORANDUM OPINION & |
| HNB NATIONAL BANK, et al., | ) | ORDER |
| | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are three motions to dismiss plaintiffs' second amended complaint separately filed by defendants SunTrust Bank, N.A. ("SunTrust") (Doc. No. 62), Fifth Third Bank ("Fifth Third") (Doc. No. 63), and Huntington National Bank ("HNB") (Doc. No. 64) (collectively "defendant depositary banks"). Plaintiffs have filed oppositions to the motions (Doc. Nos. 72, 80, 81) and defendant depositary banks have filed replies (Doc. Nos. 75, 82, 83). This matter is ripe for disposition. For the reasons that follow, defendant depositary banks' separately filed motions to dismiss are each **GRANTED**.

## I.      BACKGROUND

### A.  Procedural History

On March 26, 2012, plaintiffs filed a "Proposed Class Action Complaint" (the "original complaint") in the Summit County, Ohio Court of Common Pleas. (Doc. No. 1-1 at 12.) Plaintiffs' original complaint asserted a single count against defendants HNB, Fifth Third, SunTrust, and Wachovia Bank ("Wachovia"): conversion of a negotiable instrument in violation of Ohio UCC § 3-420, as codified in Ohio Rev. Code § 1303.60. On April 11, 2012, plaintiffs filed an "Amended Class Action Complaint" (the "amended complaint") in the state court. (Doc.

No. 1-2 at 51.) In addition to adding several additional defendant banks, the amended complaint added two further causes of action: (1) improperly paying an instrument in violation of Ohio UCC § 4-401, as codified in Ohio Rev. Code § 1304.30; and (2) aiding and abetting tortious conduct.

On April 27, 2012, HNB timely removed this action to this Court pursuant to 28 U.S.C. §§ 1441(a), 1446, and 1453 and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (Doc. No. 1.) Thereafter, each of the defendant banks moved to dismiss the amended complaint, arguing that plaintiffs' claims were untimely. In response, plaintiffs moved to remand this action to state court, arguing that the amount in controversy did not exceed $5 million under CAFA. (Doc. No. 54.) Plaintiffs contemporaneously moved for leave to file a second amended complaint ("SAC"), in order to disclaim any award of damages in excess of $4,999,999.99. (Doc. No. 57.)

On July 18, 2012, the Court granted plaintiffs leave to file their SAC. (Doc. No. 60.) In addition to disclaiming damages in excess of the CAFA threshold, the SAC omits plaintiffs' prior claims for violation of Ohio UCC § 4-401 and aiding and abetting, and asserts a single claim for conversion under Ohio UCC § 3-420 against HNB, Fifth Third, and SunTrust.[1]

---

[1] Wells Fargo, N.A. ("Wells Fargo") was added as one of only four party-defendants named in plaintiffs' Second Amended Complaint (SAC), filed on July 20, 2013. (Doc. No. 61.) Wells Fargo was the only defendant in the SAC not named in the amended complaint, and plaintiffs were granted leave to file the SAC to add Wells Fargo. (*See*, Doc. No. 43.) On February 20, 2013, the Court ordered plaintiffs to show cause why Wells Fargo should not be dismissed from this action pursuant to Fed. R. Civ. P. 4 and LR 4.2 for want of prosecution due to the failure of plaintiffs to serve Wells Fargo. (Doc. No. 85.) On March 4, 2013, plaintiffs responded to the show cause order. Upon review, the Court finds that plaintiffs have failed to demonstrate good cause for their failure to serve Wells Fargo. Further, the Court concludes there is no reason to exercise its discretion and extend the time for service.

If a plaintiff has not properly served the defendant within the prescribed 120-day period, Fed. R. Civ. P. 4(m) directs a court to undertake a two-part analysis. First, the court must determine whether the plaintiff has shown good cause for its failure to effect service. If it has, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Second, if the plaintiff has not shown good cause, the court must either (1) dismiss the action without prejudice or (2) direct that service be effected within a specified time. *Henderson v. United States*,

The SAC dropped several defendant banks previously added to the amended complaint; plaintiffs

having separately dismissed those defendants without prejudice on July 17, 2012. (Doc. No. 55.)

On February 12, 2013, the Court denied plaintiffs' motion to remand, concluding

that removal pursuant to CAFA was proper and finding that plaintiffs' post-removal disclaimer

of damages did not divest this Court of CAFA jurisdiction. (Doc. No. 84.)

### B.  Facts Alleged in the Second Amended Complaint (Doc. No. 61)

The SAC alleges that, in 1998 or 1999, plaintiffs lost money in an alleged Ponzi

scheme orchestrated by a third party, James P. Carpenter III. (SAC ¶¶ 1-4.) Plaintiffs contend

that Carpenter and a "substantial network of dupe salespeople fraudulently induced" them into

purchasing promissory notes issued by two non-existent entities, Lomas de la Barra

Development, Inc. ("Lomas") and Serengeti Diamonds USA, Inc. ("Serengeti"). (*Id.* ¶¶ 1, 5.)

---

517 U.S. 654, 662 (1996); *Osborne v. First Union Nat'l Bank of Del.*, 217 F.R.D. 405, 408 (S.D. Ohio 2003). Establishing good cause is the responsibility of the party seeking an extension of the time to serve, and "necessitates a demonstration of why service was not made within the time constraints." *Habib v. GMC*, 15 F.3d 72, 73 (6th Cir. 1994). *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006). Under Rule 4(m), the Court has discretion to permit late service even absent a showing of good cause. *Osborne*, 217 F.R.D. at 408. *See Henderson*, 517 U.S. at 662. While the Court has the discretion to fashion an appropriate remedy for failing to effect service, "exercising that discretion necessarily means that relief in the form of an extension is not afforded as a matter of course, else there would be no reason to have Rule 4(m) with its time limit for service." *Turner v. Grant Cnty. Det. Ctr.*, No. 05-148-DLB, 2007 WL 1433930, at *2 (E.D. Ky. May 10, 2007).

Here, plaintiffs acknowledge, "they had the duty and unimpeded ability to initiate service on Wells Fargo before November 18, 2012 and inadvertently failed to do so. (Doc. No. 87 at 2222.) Despite this, they contend that 'excusable neglect' exists for their failure to serve Wells Fargo because (they contend) there is no danger of prejudice to Wells Fargo due to its familiarity with the past litigation, their failure to perfect service will have only delayed this case by 115 days, and the impact on the judicial proceedings should be negligible. Remarkably, plaintiffs then cast the blame for their predicament on Wells Fargo itself, by asserting that Wells Fargo's litigation strategy foreseeably led to the multi-year prolongation of plaintiffs' litigation of their claims. (*Id.* at 2221.)

Plaintiffs' arguments, however, are unavailing and cannot be reconciled with the record in this case. To date, the parties in this case have engaged in extensive briefing on a number of issues, including the propriety of removal, an issue that the Court has resolved. As well, all three of the other named defendant depositary banks filed motions to dismiss the SAC, with briefing on the issue complete on February 1, 2013. By the within Memorandum Opinion and Order, the Court finds all of the motions well taken on the basis that the statute of limitations has run on plaintiffs' claims. In light of this record, it can hardly be said that there is no risk of prejudice to Wells Fargo or that the impact on these proceedings would be minimal. To the contrary, given the basis for the Court's disposition of the motions to dismiss, permitting plaintiffs more time to serve Wells Fargo would serve no purpose but to delay the resolution of this matter and to revisit issues that have already been decided, not only in this action, but also other cases in this district and by the Sixth Circuit. Accordingly, Wells Fargo is hereby **DISMISSED** from this action for want of prosecution pursuant to Fed. R. Civ. P. 4(m).

Carpenter or his accomplices promised plaintiffs that the notes would have an annual return of 10.9%, and that payments would be "guaranteed" by a third-party corporate guarantor. (*Id.* ¶ 3.) Carpenter's scheme produced hundreds of checks that plaintiffs purport to have "had legal and/or equitable title." (*See, e.g.*, ¶¶ 2, 10-12.)

   Plaintiffs assert they were injured when each of the defendant "depositary banks," Fifth Third, HNB, and SunTrust, allowed Carpenter or his agents to negotiate their checks "into one or more accounts opened in the name of Lomas and Serengeti" at Carpenter's behest. (*Id.* ¶ 11.) The SAC alleges these accounts were, in truth, "100% controlled by and in the title of Carpenter," which allowed Carpenter to abscond with plaintiffs' funds. (*Id.* ¶¶ 2, 11.)[2] On these facts, plaintiffs assert a single cause of action against the defendant banks for conversion of an instrument in violation of Ohio UCC § 3-420. (*Id.* ¶¶ 93-97.)

### C. Prior Litigation

   This is not the first time that the vast majority of these plaintiffs, or other groups of similar plaintiffs, have attempted to file or participate in a class action against the defendant banks and other banks, asserting the same or similar claims, based on largely the same material facts. *See Metz v. Unizan Bank*, No. 5:05-cv-1510 (N.D. Ohio, Nugent, J.); *Loyd v. HNB Nat'l Bank*, No. 1:08-cv-2301 (N.D. Ohio, Nugent, J.); *Blair v. Bank One*, No. 1:08-cv-00971 (N.D. Ohio, Oliver, J.); and *Bandy v. Fifth Third Bank*, No. 1:08-cv-1064 (N.D. Ohio, Oliver, J.). Plaintiffs' counsel in this case, Daniel G. Morris ("Morris"), was involved in each of those cases.

---

[2] With respect to the alleged accounts at Fifth Third, plaintiffs also allege that Fifth Third failed to perform internal "security procedures" in opening accounts for Carpenter. Specifically, Fifth Third purportedly accepted corporate signature cards and corporate authorization resolutions with "multiple substantial irregularities." (SAC ¶¶ 72, 74, 76.) "Had Fifth Third performed its security procedures with due diligence," plaintiffs contend "it would have discovered Carpenter's identity and lack of fitness to bank for Lomas, and any other entity, closed these accounts, and refused further to bank for Carpenter, his agents or his shell and *alter ego* corporations in January and February of 1999." (*Id.* ¶ 73.)

Those cases were dismissed because the plaintiffs' Ohio UCC claims were time-barred, and no discovery rule applied. Three of those decisions were appealed to the Sixth Circuit and the decisions were affirmed in a combined decision. *Metz v. Unizan Bank*, 649 F.3d 492 (6th Cir. 2011). The dismissal in the fourth case, *Bandy*, was recently likewise affirmed. *Bandy v. Fifth Third Bank*, No. 11-4184, slip op. at 4-5 (6th Cir. Mar. 13, 2013).

   1.  *Metz v. Unizan Bank*

In May 2005, the *Metz* action was initiated by a class of plaintiffs alleging they lost money when they purchased phony promissory notes in 1998 and 1999 in the same Ponzi scheme alleged in this case. SunTrust, HNB, and Fifth Third were among the named defendant depositary banks in *Metz*.[3] There, as in this case, plaintiffs asserted claims against the depositary banks for conversion under the Ohio UCC.[4] However, the *Metz* plaintiffs later dropped that claim from their second amended complaint and, on February 24, 2006, the court dismissed plaintiffs remaining UCC claims as barred by the applicable three year statutes of limitations found in Ohio Rev. Code §§ 1303.06 or 1304.09. *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006). Additionally, the court concluded that the discovery rule did not apply to those statutes, finding that the limitations periods were triggered at the time the alleged wrongful conduct occurred in 1998 and 1999. *Id.* at 578.[5]

---

[3] HNB was named individually, but by the time the *Metz* case was filed, it had merged with and become the corporate successor to defendant Unizan Bank. *See* HNB BANCSHARES INCORPORATED, Investor Relations – Corporate Press Release *HNB Bancshares and Unizan Financial Corp. Complete Merger* (Mar. 1, 2006), http://www.investquest.com/iq/h/hban/ne/finnews/hban030106uniz.htm (announcing completion of merger originally announced on January 27, 2004).

[4] Plaintiffs also asserted claims against the depositary banks for fraud, conspiracy to commit fraud, negligence, failure to act with ordinary care under the Ohio UCC, breach of the duty of good faith under the Ohio UCC, and aiding and abetting.

[5] On May 7, 2008, plaintiffs' remaining claims against SunTrust and Fifth Third were dismissed with prejudice. Further, the court dismissed all but plaintiffs' fraud, conspiracy to commit fraud, and aiding and abetting claims against Unizan (HNB). *Metz v. Unizan Bank*, 5:05 CV 1510, 2008 WL 2017574, at *5 (N.D. Ohio May 7, 2008)

Thereafter, between December 20, 2007 and January 16, 2008, Morris filed more than 100 motions to intervene in the *Metz* case on behalf of additional plaintiffs seeking to assert conversion claims against the defendant depository banks. Twenty-eight of the would-be intervenors are plaintiffs in this action.[6] The motions to intervene in *Metz* were denied as untimely, in part, because the "proposed intervenors had been aware of or should have been aware of their interest in [the] proposed class action litigation" since 2005. *Metz v. Unizan Bank*, No. 5:05 CV 1510, 2008 WL 1744769, at *3 (N.D. Ohio Apr. 11, 2008).[7]

2. *Loyd v. Huntington National Bank*

On September 29, 2008, Morris filed the *Loyd* case in this court on behalf of yet another class of plaintiffs alleging they were injured by Carpenter's Ponzi scheme. Three of the named plaintiffs in *Loyd* are plaintiffs in this action.[8] Again, as in *Metz*, the *Loyd* plaintiffs alleged in their original complaint that the defendant depository banks, including SunTrust, HNB, and Fifth Third committed violations under the UCC (including UCC conversion claims, failure to exercise ordinary care, and breach of duty of good faith), among other wrongs. The plaintiffs subsequently filed an amended complaint, dropping their UCC conversion claims.

---

*aff'd*, 649 F.3d 492 (6th Cir. 2011). The *Metz* plaintiffs sought, but were denied class certification as to their remaining claims against HNB.

[6] They are Joanne Beifus, Murray Caldwell, Thomas Corwin, Charles Davis, Joseph Enley, Martha Glauber, Arlene Guerin, Donald Irwin, Savie Klienerman, Charles Kreilein, Daniel Luebbehusen, Gail Lythos, Jacqueline Mattison, David Miller, Victor Miller, Glenn Newton, Dennis Palotas's heir (Paula Palotas), Gizella Poulos, Cora Roy, Mary Ann Schaus, Earl Snell, William Stonecipher, William Urban, John Vargo, Raymond Verkamp, Gary Waninger, Daniel Warner, and Dan Wetzel's heir (Bobby Wetzel).

[7] Subsequently, on May 1, 2009, the district court granted HNB summary judgment on the fraud and conspiracy claims and sanctioned Morris under the court's inherent authority for naming Fifth Third as a defendant in the intervenors' complaint despite the fact that Fifth Third had previously been dismissed from the action with prejudice. *Metz v. Unizan Bank*, 655 F.3d 485, 490-91 (6th Cir. 2011), *reh'g denied* (Sept. 19, 2011) (affirming imposition of sanctions on Morris for disregarding district court's orders and failing to respond to Fifth Third's motion or to attend pretrial conference). On May 14, 2009, a jury returned a verdict in favor of HNB as to the one remaining claim for aiding and abetting and as to the only remaining named plaintiff, and judgment was entered in favor of HNB on May 19, 2009.

[8] They are Daniel Luebbehusen, Jacqueline Mattison, and Glenn Newton.

6

On June 19, 2009, the court dismissed the *Loyd* plaintiffs' remaining Ohio UCC claims as barred by the three year statutes of limitations found in Ohio Rev. Code §§ 1303.16 and 1304.09 and again concluded that the discovery rule did not apply. *Loyd v. HNB Nat'l Bank*, No. 1:08CV2301, 2009 WL 1767585, at *7 (N.D. Ohio June 18, 2009).[9] Further, the court concluded that, even if the discovery rule did apply, plaintiffs' claims would still be barred because plaintiffs were on notice of Carpenter's alleged fraud more than four years prior to the filing of their complaint. *Id.* at *11.

3. *Blair v. Bank One*

On April 15, 2008, Morris filed the *Blair* case in this court on behalf of a class of plaintiffs who also allegedly lost money in Carpenter's Ponzi scheme, this time when they invested in 1999 and 2000 in a different non-existent entity, Rawhide Select, Inc. Four of the named plaintiffs in *Blair* are plaintiffs in this action,[10] and Fifth Third and HNB were named as defendant depositary banks. The complaint and first amended complaint in *Blair* asserted several Ohio UCC claims, including a conversion claim, which was later dropped from the second amended complaint. On September 30, 2009, the court dismissed the claims; again, finding those claims barred by the three year Ohio UCC statutes of limitations. Citing to *Metz* and *Loyd*, the court again concluded that the discovery rule did not apply. *Blair v. JP Morgan Chase Bank Nat'l*, No. 1:08 CV 971, 2009 WL 8580038, at *11-13 (N.D. Ohio Sept. 30, 2009).

---

[9] Plaintiffs' additional claims for fraud, fraudulent concealment, conspiracy to commit fraud, and aiding and abetting were determined to arise out of the sale of securities and were dismissed as barred by the statute of limitations governing Ohio securities laws, Ohio Rev. Code § 1707.43(B). *Loyd v. HNB Nat'l Bank*, No. 1:08CV2301, 2009 WL 1767585, at *9 (N.D. Ohio June 18, 2009).
[10] They are Joseph Enley, Mary Enley, Charlie Verkamp, and Raymond Verkamp.

4.  *Bandy v. Fifth Third Bank*

On April 25, 2008, Morris filed the *Bandy* case in this court on behalf of a class of plaintiffs who also purportedly lost money in Carpenter's scheme by investing in several other non-existent entities between 1999 and 2000. Eleven of the named plaintiffs in *Bandy* are also named as plaintiffs in this action.[11] The plaintiffs sought to hold the defendant depositary banks, including Fifth Third and HNB, liable for various acts of fraud, fraudulent concealment, and conspiracy to commit fraud and violations of the Ohio UCC, including a claim for conversion. The conversion claim was subsequently dropped from the second amended complaint. On June 18, 2009, as in *Metz*, the court again held that the discovery rule did not apply to any of the remaining Ohio UCC claims and, accordingly, those claims were barred by the applicable three-year statutes of limitations.[12]

5.  *Metz, Loyd, and Blair* on Appeal

The decisions in *Metz*, *Loyd* and *Blair* were all appealed to the United States Sixth Circuit Court of Appeals. Morris was one of the attorneys presenting argument in that appeal.

On August 19, 2011, in a combined decision, the Sixth Circuit affirmed and "decline[d] to apply a discovery rule to the statute of limitations in either §§ 1303.16(G) or 1304.09 when considering the timeliness of the plaintiffs' UCC claims." *Metz v. Unizan Bank*, 649 F.3d 492, 497-98 (6th Cir. 2011). The court held:

> Since no discovery rule applies, the Plaintiffs waited too long to file their UCC claims. The Plaintiffs allege that Carpenter's Ponzi scheme . . . took place

---

[11] They are Frances Pate, Jerome Pate, Rita Brodnik, Leona Franks, Gail Lythos, Victor Miller, Gizella Poulos, John Vargo, Raymond Verkamp (individually and as heir to Leo Verkamp), and Charlie Verkamp.

[12] Plaintiffs' remaining claims for fraud, fraudulent concealment, conspiracy to commit fraud, and aiding and abetting were dismissed pursuant to the statute of limitations in Ohio's securities laws, Ohio Rev. Code § 1707.43(B). Further, the court determined those claims were filed more than two years after they should have been discovered.

8

between 1998 and 2000. Under the three-year statutes of limitations in §§ 1304.09 and 1303.16(G), the Plaintiffs had until 2003 at the latest to file their UCC claims.

*Id*. at 498.

The court continued:

Even if we were to apply a discovery rule . . . , the Plaintiffs' UCC claims are still time-barred because they knew of the possibility of wrongdoing more than three years before bringing their claims. . . . Here, the Plaintiffs were on notice of the defendant banks' possible wrongdoing by 2001. Between 1999 and 2001, Carpenter stopped making interest payments to the Plaintiffs from their investments in his sham companies. A reasonable person would have been alerted to the possibility that the drawee banks had debited the Plaintiffs accounts with checks that were not properly payable because they were made to fraudulent companies. A reasonable person would also have been alerted to the possibility that the depositary banks violated their duty to act with ordinary care and in good faith by maintaining accounts for fraudulent companies.

*Id*. at 498. The court concluded its analysis observing, "Thus, under a discovery rule, the Plaintiffs would have had until 2004 to bring their UCC claims. Because they waited until 2005 and 2008, §§ 1304.09 and 1303.16(G) would *still* bar the Plaintiffs' UCC claims, even under a discovery rule." *Id.* (emphasis in original).

6. *Bandy* on Appeal

The plaintiffs in *Bandy* also appealed the dismissal of their claims to the Sixth Circuit. On March 13, 2013, the court affirmed the district court's dismissal of the *Bandy* plaintiffs' second amended complaint. Of significance to the issue in this case, the Sixth Circuit concluded that the plaintiffs had failed to plead "sufficient facts to create even a 'suspicion' of a cause of action[]" for conversion under the Ohio UCC, but, that even if the *Bandy* plaintiffs had sufficiently pleaded Ohio UCC conversion claims, "such claims would still be dismissed based on the statute of limitations." *Bandy*, *supra*, Slip Op. at 4-5.

## II.      STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n. 3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570)). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds to his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations and quotations omitted). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678–79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### III.    ANALYSIS

**Plaintiffs' Ohio UCC Conversion Claims Are Time Barred**

Plaintiffs allege that the defendant depositary banks violated Ohio Rev. Code § 1303.60, Ohio's UCC provision dealing with conversion of an instrument. Fifth Third, SunTrust, and HNB separately move to dismiss plaintiffs' claims as barred by the three-year statute of limitations set forth in Ohio Rev. Code § 1303.16(G)(1). Plaintiffs argue that the statute of limitations was tolled until they were able to discover the identity of the depositary bank that converted their checks.

"Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Collins v. Sotka*, 81 Ohio St. 3d 506, 507 (1998) (citation omitted). In some kinds of cases, a discovery rule applies, whereby "the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 495 (2006). "Generally, the discovery rule can act to toll the statute of limitations for claims for common-law conversion and fraud." *Mattlin Holdings, L.L.C. v. First City Bank*, 189 Ohio App. 3d 213, 216 (Ohio Ct. App. 2010) (citing *Cundall v. U.S. Bank*, 122 Ohio St. 3d 188 (2009)).

Here, there can be no dispute that the claims against the defendant depositary banks were filed after the expiration of the relevant statute of limitations period, which is the three-year period set forth in Ohio Rev. Code § 1303.16(G)(1). *See Metz, Loyd, Blair,* and *Bandy, supra*. The issue then is whether the statute of limitations applicable to plaintiffs' Ohio UCC conversion claims, § 1303.16(G)(1), can be tolled by application of the discovery rule.

11

Plaintiffs contend that it can, pursuant to Ohio Rev. Code § 2305.09, which provides that, "[i]f [an] action is for . . . the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered." Plaintiff's arguments are not well taken.

The plaintiffs in *Metz*, who were all makers of the checks at issue, raised this same argument, in an attempt to avoid application of the three year Ohio UCC statute of limitations. In their attempt, plaintiffs argued their Ohio UCC claims were really conversion claims subject to a discovery rule. *Metz*, 649 F.3d at 496. The Sixth Circuit observed, however, that even if the plaintiffs had asserted Ohio UCC conversion claims, which the court concluded they had not, "the Plaintiffs would be statutorily barred from raising such claims" because the Ohio UCC establishes a claim for conversion of an instrument and that statute "bars such claims by issuers of checks[;]" and "there [was] no dispute the Plaintiffs [were] the makers of the arguably converted checks . . . ." *Id.* at 497 (citing Ohio Rev. Code §§ 1303.60 and 1303.01(A)(6)). Nonetheless, the court went on to observe that "Plaintiffs cannot possible re-characterize their claims to make use of the discovery rule in § 2305.09." *Id.* But plaintiffs attempt to do exactly that in this case, with a slightly different twist.

Plaintiffs' SAC alleges that they are not the makers of "roughly half" of the checks at issue and, therefore, are not precluded from bringing their conversion claims pursuant to § 1303.60.[13] Plaintiffs cite to the *Metz* opinion and argue that, "the [Sixth Circuit] accepted the

---

[13] In support, plaintiffs attach approximately sixty-six exhibits; they argue the exhibits show that plaintiffs are not the makers of their checks, which purportedly consist of "third party beneficiary checks, third party checks, official checks or cashier's checks." (Doc. No. 80-1 at 2040-41.) "When reviewing a motion to dismiss, a district court may not consider matters beyond the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) (further citation omitted)). If the district court considers matters outside of the complaint, the motion to dismiss is effectively converted to a motion for summary judgment. *Id.* (citing *Kostrzewa*, 247 F.3d at 643). However, "[i]n ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations,

Plaintiffs' arguments that UCC conversion claims are subject to the discovery rule." (Doc. No. 72-1 at 1465.) However, in making this argument, plaintiffs rely on dicta as "holding" something the court did not in fact say and ignore the rest of the court's opinion expressly declining "to apply a discovery rule to the statute of limitations in either §§ 1304.09 or 1303.16(G) claims." *Metz*, 649 F.3d at 497-98.

The Sixth Circuit observed that, although the Ohio Supreme Court has never addressed this issue, three Ohio appellate courts have, and each concluded that no discovery rule applies. *Id.* at 497 (citing *Mattlin Holdings, L.L.C. v. First City Bank*, 189 Ohio App. 3d 213 (Ohio Ct. App. 2010) (for a UCC conversion claim, § 1303.16(G) "is not tolled by a discovery rule"); *W. Ohio Colt Racing Ass'n v. Fast*, No. 10–08–15, 2009 WL 737776, at *5 (Ohio Ct. App. Mar. 23, 2009) (§ 1303.16(G) begins running at the time of the wrongful conduct); *Connors v. U.S. Bank*, No. 07AP–649, 2008 WL 1759071, at *6 (Ohio Ct. App. Apr. 17, 2008) (for failure to exercise ordinary care under the UCC, both §§ 1304.09 and 1303.16 begin running at the time of wrongful conduct)). Further, the court noted, "[t]his approach is consistent with the treatment of statutes of limitations for UCC claims in the majority of other jurisdictions." *Id.* (collecting cases).

---

even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Flex Homes, Inc. v. Ritz–Craft Corp. of Mich.*, 721 F. Supp. 2d 663, 669 (N.D. Ohio 2010) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F. Supp. 2d 914, 924–25 (N.D. Ohio 2009) (additional citations omitted)); *see New Eng. Health Care Emp.. Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003). Here, the Court may consider the checks submitted without converting defendants' motions to dismiss into ones for summary judgment, as the checks were referred to in the pleadings and are integral to plaintiffs' claims therein. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999), *overruled in part on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

13

That the Sixth Circuit did not carve out an exception for a conversion claim as argued by plaintiffs is clarified further by its opinion in *Bandy*, where the court, in *dicta*, expressly rejected the very same arguments raised by plaintiffs here:

> The plaintiffs severely misconstrue our holding in *Metz*–that Ohio Revised Code § 1303.60 bars issuers and acceptors of instruments from bringing U.C.C. conversion claims–as binding authority that non-issuers and non-acceptors of instruments may bring a claim for U.C.C. conversion and apply the discovery rule to toll the statute of limitations. If the plaintiffs are indeed not "issuers or acceptors" of the checks, they are not statutorily barred from bringing suit in the first place, but that does not mean they benefit from discovery rule tolling. Taking the plaintiffs' reasoning to its ultimate end, there would be two separate causes of action for U.C.C. conversion in Ohio: one that applies to "issuers and acceptors" of an instrument but has no discovery rule, and one that applies to non-issuers and non-acceptors and has a discovery rule. That result cannot be right because the first cause of action would be statutorily barred by section 1303.60 and the second would contravene Ohio precedent, which finds the discovery rule not applicable to any U.C.C. conversion claims. *See Mattlin Holding, L.L.C. v. First City Bank*, 937 N.E.2d 1087, 1088-89 (Ohio Ct. App. 2010) (holding that a plaintiff, who happened to be the issuer of the checks in question, could not use a discovery rule to toll the statute of limitations for a U.C.C. conversion claim).

*Bandy*, No. 11-4184 at 5-6.

Section 1303.16(G)(1) provides, "Unless governed by other law regarding claims for indemnity or contribution, any of the following actions shall be brought within three years after the cause of action accrues: (1) An action for *conversion* of an instrument, an action for money had and received, or a similar action based on conversion[.]" Ohio Rev. Code § 1303.16(G)(1) (emphasis added). By this express statutory language, plaintiffs' UCC conversion claims are governed by the three year statute of limitations in § 1301.16(G) and, as further explained by Sixth Circuit in *Bandy*, no discovery rule applies.

Moreover, even if the Court were to find that a discovery rule did apply, plaintiffs' claims would still be time barred. Plaintiffs here are no strangers to the multitude of

14

lawsuits that have been brought based on Carpenter's alleged Ponzi schemes. As outlined above, several courts within this district, as well as the Sixth Circuit, have independently concluded that plaintiffs here knew of their potential claims well before the three-year statute of limitations had run. The Sixth Circuit noted the first such action was *Posen v. New England Int'l Surety*, No. CV20000-06-2623 (Summit Cnty., Ohio Ct. C.P.). Plaintiffs here were members of the class certified in *Posen*, which consisted of the following:

> All individuals who, during the time periods between and including 1997 and 1999, purchased promissory notes in either Defendant Serengeti or Defendant Lomas from Defendants Carpenter or the Carpenter corporations and who were injured when both Serengeti and Lomas defaulted on the notes and New England failed to make payments on the guarantees.

*Posen*, No. CV2000-06-2623, Order and Entry Granting Plaintiff's Motion for Class Certification at 9 (Summit Cnty., Ohio Ct. C.P. May 6, 2004) (Doc. No. 32-2.). Further, as noted above, more than two thirds of the current plaintiffs were involved in some capacity in the prior actions in this court.[14]

Despite this, plaintiffs here argue that, although they may have been aware of Carpenter's schemes, they did not know the identity of the wrongdoers, i.e., the depository banks. They contend that, pursuant to Ohio Rev. Code § 2305.09, the statute of limitations on their conversion claims was tolled until such time as they discovered the identity of the banks that purportedly converted their checks. This argument does not help plaintiffs, however, as the court in *Loyd* found that the very same depository banks, named as defendants here, "had been identified as having accounts related to the Lomas and Serengeti investments prior to September 2006[,]" *Loyd*, 2009 WL 1767585 at *11, *more than five years before* plaintiffs filed this action.

---

[14] Of the 46 named plaintiffs here, 35 either moved to intervene in *Metz* and/or were named plaintiffs in *Blair*, *Bandy*, or *Loyd*.

15

Further, plaintiffs' admit, in their second amended complaint, that they were aware Carpenter had stopped "pretending to pay . . . their interest payments, and refused to redeem their debentures[]" in 1999, (*see* Doc. No. 61 at 1268), and, therefore, as the Sixth Circuit observed in *Metz*, plaintiffs here should have also been aware of "the defendant banks' possible wrongdoing." *Metz*, 649 F.3d at 498. Further, plaintiffs admit that they "discovered the identity and nature of Carpenter and the identity of the relevant depositary banks . . . after the filing of the *Metz* litigation" in 2005. *Id.* Notwithstanding this knowledge, plaintiffs argue that the statute of limitations was tolled until March 24, 2009 when the district court denied the *Metz* plaintiffs' motion for class certification. It is well settled, however, that under the class action tolling doctrine, "only claims expressly alleged in a previous federal lawsuit are subject to tolling." *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 718 (N.D. Ohio 2010) (citations omitted). Here, it is undisputed that neither the *Metz* lawsuit nor any of the other related lawsuits filed by Morris asserted a claim for UCC conversion. Accordingly, even accepting plaintiffs' assertion that they did not discover the identity of the depositary banks until 2005, plaintiffs had to file their UCC conversion claims by no later than 2008 for them to be timely.

Consequently, for all the reasons stated above, plaintiffs' Ohio UCC conversion claims are barred by the applicable statute of limitations and are dismissed.[15]

---

[15] Because the Court concludes that plaintiffs' claims are time barred, it need not reach the issue of whether those claims are also *res judicata* as argued by SunTrust.

**IV.      CONCLUSION**

For all the foregoing reasons, defendant depositary banks' motions to dismiss (Doc. Nos. 62, 63, and 64) are **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated: March 18, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**